**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| EFRAIN ROMERO-GARCIA, as father and statutory next-of-kin of Efrain Romero de la Rosa,<br><br>    Plaintiff,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>    Defendant. | Civil Action No. 4:20-cv-00158-CDL |

**DEFENDANT CORECIVIC'S MOTION TO DISMISS COUNTS 2 AND 3 OF PLAINTIFF'S COMPLAINT**

  Defendant CoreCivic, Inc. ("CoreCivic") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint, Counts 2 and 3, for failure to state a claim upon which relief may be granted. CoreCivic's Motion is based on the allegations in the Complaint and the accompanying Memorandum in Support. For the reasons set forth in its Memorandum, CoreCivic's Motion should be granted.

**MEMORANDUM AND POINTS OF AUTHORITIES**

**I. FACTUAL ALLEGATIONS**

  Plaintiff Efrain Romero-Garcia ("Plaintiff") alleges he is the father of Efrain Romero de la Rosa ("Decedent"). (Doc. 1 at ¶ 2.) Decedent was detained at CoreCivic's Stewart Detention Center in Lumpkin, GA. (*Id*. at ¶¶ 4, 23.) Decedent suffered from schizophrenia, which required him to be transferred offsite for inpatient mental health monitoring in May of 2018. (*Id*. at ¶ 22.) Decedent returned to Stewart in June 2018, and shortly thereafter was convicted of a disciplinary violation and sanctioned with disciplinary segregation for a period of 30 days. (*Id*. at ¶¶ 23, 25,

27.) On July 10, 2018, while on disciplinary segregation status, Decedent committed suicide. (*Id*. at ¶ 28.)

Plaintiff brought this suit against CoreCivic on July 9, 2020.  He raises three claims for relief: Wrongful Death under Georgia State law (Count One), Torture (Count Two), and Disability Discrimination (Count Three).

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1986)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678.

A complaint must allege sufficient factual matter that is "plausible on its face." *Iqbal*, 556 U.S. at 678.  Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully."  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (internal quotation marks omitted).  Although in ruling on a Rule 12(b) motion to dismiss the Court must accept factual allegations in the complaint as true, it is not required to accept a plaintiff's "legal conclusions" or "unwarranted deductions of fact," nor must it "draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citations omitted).  A

complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. LEGAL ARGUMENT

### A. The Court Should Dismiss Count Two: Torture.

Plaintiff brings Count Two against CoreCivic under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. The ATS is enigmatic because it has been held to be both a statute which confers jurisdiction as well as establishing an independent cause of action. To state a claim under the ATS, and thus vest jurisdiction in the Court, Plaintiff must "(1) be an alien, (2) suing for a tort, which was (3) committed in violation of international law." *Lopez v. Richardson*, 647 F. Supp. 2d 1356, 1365 (N.D. Ga. 2009). Where any of these elements are missing, dismissal is appropriate under both Rule 12(b)(1) and 12(b)(6). *Asemani v. Ahmadinejad*, Civ. A. No. RDB-10-874, 2010 WL 1609787, at *1 (D. Md. Apr. 20, 2010) (dismissing Complaint because "there is no jurisdiction unless there is a valid allegation of violation of the law of nations within the meaning of the" ATS); *Cohen v. Clemens*, 321 Fed. App'x 739, 741 n.3 (10th Cir. 2009) (affirming *sua sponte* dismissal of inmate complaint's ATS allegations because inmate "fails to allege that Defendants committed any violation of the law of nations or a United States treaty.")

The Supreme Court has held that the ATS was intended to reach only a "modest set of actions alleging violations of the law of nations [such as] offenses against ambassadors, violations of safe conduct . . . and individual actions arising out of prize captures and piracy" and commanded courts to exercise "great caution" in expanding the scope of actionable claims. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004) (citations omitted); *see id*. at 725 & 728. To state a claim and establish jurisdiction, Plaintiff bears the burden of pleading allegations which explain the source of these norms, prove that they have definite content and acceptance among nations, and also

provide a practical cause of action available to litigants. *Id*. at 732. Plaintiff fails to meet this high burden.

Plaintiff alleges CoreCivic's conduct against Decedent constitutes torture and cruel, inhuman, and degrading treatment under the Convention Against Torture and Other Cruel Inhuman and Degrading Treatment ("CAT"), to which the United States is a party. *See* 8 C.F.R. § 208.18. (Doc. 1 at ¶¶ 55-56.) The CAT defines "torture" as

> Any act by which severe pain or suffering, whether physical or mental, is **intentionally inflicted** on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the **instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity**. It does **not** include pain or suffering arising only from, inherent in or incidental to **lawful sanctions**.

8 C.F.R. § 208.18(a)(1) (emphasis added). Plaintiff's Complaint fails to allege "torture" under this definition. The Complaint alleges that "CoreCivic ordered [Decedent's] placement for 30 days in prolonged solitary confinement as punishment." (Doc. 1 at ¶ 58.) Plaintiff does not allege that any CoreCivic employee "intentionally inflicted" severe pain or suffering on Decedent. Nor does it allege that this act was "instigated or with the consent or acquiescence" of a public official. Further, the Complaint alleges that Decedent was placed in solitary confinement as punishment for a disciplinary conviction. (Doc. 1 at ¶ 27.) Plaintiff does not allege that this "sanction" was not lawful or that this mere placement status caused or contributed to Decedent's death.

Moreover, Plaintiff has not described an act that has the "gravity" to be considered torture. *See Lopez*, 647 F.Supp.2d 1356, 1367 (N.D. Ga. 2009). As noted in *Price v. Socialist People's Libyan Arab Jamahiriya*, the

> critical issue is the degree of pain and suffering that the alleged torturer intended to, and actually did inflict upon the victim. The more intense, lasting, or heinous the agony, the more likely it is to be torture . . . This understanding thus makes it clear that torture does not automatically result whenever individuals in official custody are subjected even to direct physical assault. Not all policy brutality, not every instance of excessive force used against prisoners, is torture under the [CAT].

294 F.3d 82, 92 (D.C. Cir. 2002). Here, Plaintiff has not even plead an action outside of the "norms" of United States law or policy, much less one that rises to the level of torture. The ICE Performance-Based National Detention Standards allow disciplinary segregation to be used as a sanction for detainees who violate policies in detention. *See* U.S. Immigration and Customs Enf't, *Performance-Based National Detention Standards 2011 (rev. 2016)*, *available at* https://www.ice.gov/detention-standards/2011, *last accessed* Nov. 12, 2020.[1] Specifically, Section 3.1(K)(2) states, "[t]ime in segregation . . .shall generally not exceed 30 days per incident, except in extraordinary circumstances[.]"

It is well-settled that allegations of cruel, inhumane and degrading treatment, even when they result in gross humiliation, fear and anguish, are too broad to be actionable. *Lopez*, 647 F.Supp.2d at 1366 ("violation of the laws of nations brought under § 1350 must be specific and well-accepted. [Dismissing ATS claim because] Plaintiff has not demonstrated that his claims of arbitrary detention of a minor and cruel, inhumane and degrading treatment or punishment of a minor meet this high bar.") (citations omitted); *see also Mujica v. Occidental Petrol. Corp.*, 381 F.Supp.2d 1164, 1183 (C.D. Cal. 2005) *remanded on other grounds*, 564 F.3d 1190 (9th Cir.

---

[1] Under Rule 201, the Court may "take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies" and consider such documents in ruling on a motion to dismiss without converting it into a summary judgment motion. *See United States ex rel. Modglin v. DJO Global, Inc.*, 48 F. Supp. 3d 1362, 1379-82 (C.D. Cal. 2014).

2009). Claims of mistreatment in detention, unless clearly rising to the level of torture, are not actionable under the ATS. *See Diaz v. United States*, No. 09-13855, 2010 WL 1508276, at *2 (11th Cir. Apr. 16, 2010) ("prison mistreatment claims[, while a Constitutional claim, are] not cognizable under the ATS."). The ATS is limited "only to shockingly egregious violations of universally recognized principles of international law." *Mendonca v. Tidewater, Inc.*, 159 F.Supp.2d 299, 302 (E.D. La. 2001) (holding that allegations by foreign employee that private employer discriminated against him because of his race or nationality by withholding his passport, threatening to damage his care, and forcing him to submit false information or bribes regarding taxes in his native country did not state a claim under the ATS) (citations omitted).

Here, Plaintiff fails to allege conduct that rises to the level of torture or cruel and inhumane treatment. He fails even to allege CoreCivic staff engaged in conduct outside of the realm of ICE's Performance-Based National Detention Standards. Even if Plaintiff could establish a specific and definite international norm giving rise to a cause of action under the ATS, the practical considerations weigh against recognition of any such international norm in this context. Plaintiff submits a cause of action for wrongful death under Georgia law under the same facts that support his Torture claim under the ATS. As one court cautioned, albeit in dicta, the practical danger warned against in *Sosa* is

> determinative in an action by prison inmate challenging the conditions of confinement. There are a large number of these kinds of actions brought throughout the United States. Any prison or detention center in which an alien was included among the inmates/detainees would face an ATS claim, even though the inmates/detainees would have available claims under 42 U.S.C. § 1983 or *Bivens*,

and here, under Georgia state law. *Jama v. United States Immigration & Naturalization Serv.*, 343 F.Supp.2d 338, 361 (D.N.J. 2004).

For these reasons, Count Two of Plaintiff's Complaint must be dismissed. The mere condition of confinement challenged – placement on disciplinary segregation status – does not causally connect to the Decedent's death. Nor do the allegations set forth in the Complaint amount to severe physical pain (no physical pain is alleged) or mental pain and suffering. And, neither generalized allegations of "prolonged solitary confinement" nor intentional placement in segregation for the purpose of torture are supported by facts alleged in the Complaint. (Doc. 1 at ¶ 59.)

## B. The Court Should Dismiss Count 3: Disability Discrimination.

### 1. CoreCivic is not subject to the Rehabilitation Act.

Plaintiff alleges that CoreCivic violated the Rehabilitation Act ("RA") by discriminating against Decedent based on his disability. But this claim must fail because CoreCivic is not subject to the RA. The RA provides:

> No qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving **Federal financial assistance** or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a)(emphasis added). This statute also requires Executive agencies to promulgate their own regulations to address disability discrimination. *Id*. The Department of Homeland Security ("DHS"), which houses Immigrations and Customs Enforcement ("ICE"), followed this directive by promulgating regulations which prohibit disability discrimination within the agency and among its contractors. *See* 6 C.F.R. Chapter 15. While these regulations provide for an administrative procedure for aggrieved parties to seek remedies through the agency, it does not confer a private right of action for a civil suit against the agency or its contractors under the RA. *See* 6 C.F.R. § 15.70; *see also SAI v. Dep't of Homeland Sec.*, 149 F.Supp.3d 99, 112-15 (D.D.C. 2015) (explaining that Congress did not create a private right of action against Executive agencies

through the Rehabilitation Act).   Instead, the RA only provides a private civil cause of action and remedy against "any recipient of Federal assistance or Federal provider of such assistance . . ." 29 U.S.C. § 794a(a)(2); *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (courts should not imply causes of action in the absence of evidence that Congress intended "to create not just a private right but also a private remedy."); *SAI*, 149 F.Supp.3d at 113 (noting that the RA is silent regarding "the remedies available to a person aggrieved by discrimination in a program or activity conducted by an Executive agency.")

"Federal financial assistance" is not defined in the RA, but has been construed by the courts as the government's provision of a subsidy to an entity.  *See Lee v. Corr. Corp. of Am./Corr. Treatment Facility*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014) (citing *Nolley v. Cnty. of Erie*, 776 F.Supp. 715, 742–43 (E.D.N.Y. 1991) (holding that a correctional facility receiving federal funds for detaining prisoners did not receive "Federal financial assistance" and therefore was not covered by the Rehabilitation Act); *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (holding that an entity receives "Federal financial assistance" within meaning of the Rehabilitation Act when it receives a subsidy from the federal government); *see also DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990) (finding that a defendant receives "federal financial assistance" within meaning of Rehabilitation Act when it receives a subsidy) (citing *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1208–09 (9th Cir. 1984)); *Bachman v. Am. Soc.'y of Clinical Pathologists*, 577 F.Supp. 1257, 1264 (D.N.J. 1983) ("The term 'assistance' connotes a transfer of government funds by way of subsidy.").

Payments to an entity from the Federal government in accordance with a federal government procurement contract to provide goods or services is not "Federal financial assistance" within the meaning of the RA.  *Jones v. Alabama Power Co.*, No. CV 94-PT-0094-S, 1995 WL 238332, at *19 (N.D. Ala. Jan. 3, 1995) (citing *Moore v. Sun Bank of Florida*, 923 F.2d 1423, 1430 (11th Cir. 1991) & *Arline v. School Bd. of Nassau Cty.*, 772 F.2d 759, 762 (11th Cir. 1985*) aff'd and remanded sub nom. Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, (1987)) ("[T]his court refuses to extend the definition of  'federal financial assistance' to include procurement

contracts."); *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, at *11 (E.D.N.C. Nov. 9, 2009). The regulations exempt procurement contracts involving Executive agencies from the definition of "Federal financial assistance." *Mathis*, 2009 WL 10736631, at *11 (citing 45 C.F.R. § 84.3(h) (2009)). Generally, "to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy," as opposed to compensation. *DeVargas*, 911 F.2d at 1382. The exchange of money at fair market value for services rendered does not constitute a subsidy. *Jacobson*, 742 F.2d at 1210.

Plaintiff's Complaint fails to allege that CoreCivic receives "Federal financial assistance" as defined by the RA. Per the Complaint, "[a]t all times relevant to this Complaint, Defendant owned and operated Steward Detention Center in Lumpkin, Georgia pursuant to a pass-through Inter-Governmental Services Agreement between U.S. Immigration and Customs Enforcement ("ICE") and Stewart County, Georgia."[2] (Doc. 1 at ¶ 4.) According to ICE, an Inter-Governmental Service Agreement ("IGSA") is a

> A cooperative agreement between ICE and any state, territory or political subdivision for the construction, renovation or acquisition of equipment, supplies or materials required to establish acceptable conditions of confinement and detention services. ICE may enter into an IGSA with any such unit of government guaranteeing to provide bed space for ICE detainees, and to provide the clothing, medical care, food and drink, security and other services specified in the ICE/ERO detention standards; facilities providing such services are referred to as "IGSA facilities."

ICE Performance Based National Detention Standards, 7.5 Definitions, *available at* https://www.ice.gov/doclib/detention-standards/2011/7-5.pdf.

---

[2] There is no official definition of a "pass-through Intergovernmental Services Agreement." Rather, it is a term coined by Lauren Martin's chapter, "Discretion, Contracting and Commodification: Privatization of US Immigration Detention as a Technology of Government" in *Intimate Economies of Immigration Detention: Critical Perspectives* (2017).

IGSAs are considered "procurement contracts" by the Federal government, and thus any services performed pursuant to an IGSA are not funded by "Federal financial assistance." *See Matter of: Red River Waste Sols., Inc.*, No. B-414367, 2017 WL 1075155 (Comp. Gen. Mar. 21, 2017) (Government Accountability Office decision holding that an IGSA is a procurement contract). Plaintiff alleges that CoreCivic receives subsidies from the Federal government because it operates a Voluntary Work Program for detainees at Stewart Detention Center.  (Doc. 1 at ¶ 67.) But as an operator of an ICE detention facility pursuant to an IGSA, CoreCivic is required to follow ICE's Performance-Based National Detention Standards ("PBNDS") and operate all programs contained therein.  *See* U.S. Immigration and Customs Enf't, *Performance-Based National Detention Standards 2011 (rev. 2016)*, *available at* https://www.ice.gov/detention-standards/2011, *last accessed* Nov. 12, 2020.  The PBNDS states that "[d]etainees shall be provided the opportunity to participate in a voluntary work program" through which they may earn monetary compensation.  *Id*. at §§ 5.8(I), 5.8(V)(A).  The detention facility must operate the voluntary work program in compliance with the PBNDS.  *Id*. at §§ 5.8(V)(D)-(O).  CoreCivic's operation of the voluntary work program is a term of its procurement contract, and thus its administration of the program does not constitute "Federal financial assistance."

Plaintiff's Complaint fails to allege that CoreCivic receives "Federal financial assistance." Therefore, his RA claim against CoreCivic must be dismissed.

### 2. Plaintiff fails to state a claim under the Rehabilitation Act.

Even if Plaintiff properly alleged that CoreCivic receives "Federal financial assistance," he still fails to state a claim against CoreCivic under the RA.  To state a claim under the RA, Plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was "either excluded from participation in or denied the benefits of a [CoreCivic's] services, programs, or

activities," or "was otherwise discriminated against by" CoreCivic; and (3) the "exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Henderson v. Thomas*, 913 F.Supp.2d 1267, 1287 (M.D. Ala. 2012) (quoting *Bricoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). Plaintiff fails to state allegations that satisfy the second and third prongs of this test.

Plaintiff's Complaint does not specify what "program, service, or activity" Decedent was excluded from because of his schizophrenia. Read together, Plaintiff's Complaint alleges that "CoreCivic discriminated against [Decedent] solely because of his disability. [Decedent] suffered intentional discrimination by CoreCivic in the disciplinary process solely because he suffered from schizophrenia which CoreCivic refused to control."[3] (Doc. 1 at ¶ 74.) This is nothing more than a threadbare recital of the elements and is thus insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action . . . do not suffice.")

Although Plaintiff does mention CoreCivic's disciplinary process, which could be construed as a "program, service, or activity," he does not allege that he was excluded from the disciplinary process or denied any benefits related to the process. Indeed, the only other mention of "discipline" in Plaintiff's Complaint states: "On June 21, despite this diagnosis, which CoreCivic's contract requires to be taken into consideration by the company in making segregation and punishment decisions, CoreCivic official L. Gainer sentenced [Decedent] to 30 days in solitary confinement." (Doc. 1 at ¶ 27.) Again, there is no allegation that Decedent was denied any benefit or excluded from participation in the disciplinary process.

---

[3] As noted in CoreCivic's Answer, it did not provide medical services to detainees at Stewart Detention Center during the timeframe relevant to the Complaint.

Plaintiff's Complaint also fails to allege that he was excluded from participation in a program or activity or denied a benefit because of his disability. Plaintiff does not specifically allege that CoreCivic intentionally discriminated against Decedent at his disciplinary hearing, or at any other time during his detention at Stewart Detention Center. Nor does he allege that CoreCivic did *not* take Decedent's disability into consideration during his disciplinary hearing and sentencing. (*See* Doc. 1 at ¶ 27.) Plaintiff has not articulated a claim under the Rehabilitation Act, and therefore Count Three of his Complaint must be dismissed.

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint, Counts 2 and 3, against CoreCivic with prejudice. Although disposing of these claims would dispose of all federal questions in this case, jurisdiction with this Court is still appropriate as Plaintiff's Complaint properly pleads the elements necessary for diversity jurisdiction under 28 U.S.C. Section 1332.

/ / /

/ / /

/ / /

Dated:  November 13, 2020

Respectfully submitted,

s/Daniel P. Struck
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
David Bobo Mullens, III (GA Bar No. 258029)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
dbmullens@olivermaner.com

Attorneys for Defendant CoreCivic, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of November, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

George Brian Spears        bspears@mindspring.com

Jeffrey R. Filipovits        jeff@civil-rights.law

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

s/Daniel P. Struck