IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

EFRAIN ROMERO-GARCIA, *as father*   *
*and statutory next-of-kin of*
*Efrain Romero de la Rosa*,         *

    Plaintiff,                       *
                            CASE NO. 4:20-CV-158 (CDL)
vs.                                 *

CORECIVIC, INC.,                    *

    Defendant.                       *
_____

O R D E R

Efrain Romero de la Rosa died inside a solitary confinement cell at the Stewart Detention Center ("Stewart") in Lumpkin, Georgia on July 10, 2018.  Defendant owns and operates Stewart pursuant to an agreement with U.S. Immigration and Customs Enforcement ("ICE") and Stewart County, Georgia.  Plaintiff, a resident of Mexico and de la Rosa's father, brings claims for (1) wrongful death under Georgia law; (2) torture and cruel, inhuman, and degrading treatment under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; and (3) disability discrimination under the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  Defendant moves to dismiss Plaintiff's ATS and RA claims and moves to strike some allegations from Plaintiff's amended complaint.  For the following reasons, the Court grants Defendant's motion to dismiss

Plaintiff's ATS claims but denies its motion to dismiss Plaintiff's RA claims and its motion to strike (ECF No. 23).

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in support of his claims.  The Court must accept these allegations as true for purposes of the pending motion.  Plaintiff, a resident of Mexico, is the father of de la Rosa, a 38-year-old immigrant who died by suicide at Stewart on July 10, 2018.  Am. Compl. ¶¶ 1, 2, 28, 84,

ECF No. 21.  At the time of de la Rosa's death, Defendant was a publicly traded real estate investment trust that owned and operated Stewart pursuant to a pass-through intergovernmental services agreement ("ISGA") with ICE and Stewart County, Georgia. *Id.* ¶¶ 3-4.

Two months before his death, de la Rosa presented with acute psychiatric history and psychotic symptoms that required eight medications for schizophrenia.  His history documented prior institutionalization in a mental health treatment facility by the Virginia Department of Corrections.  De la Rosa informed the Stewart staff that he was the "Anti Christ," "would die three terrible deaths," and "be dead in three days."  *Id.* ¶¶ 19-20. Throughout de la Rosa's detention at Stewart, Defendant required de la Rosa to report to sick call care at 4:00 a.m., effectively making it more difficult for him to access medical treatment and disrupting his sleep cycle, which was important to manage his schizophrenia.  *Id.* ¶ 87.  Solitary confinement also exacerbated de la Rosa's schizophrenia.  *Id.*  Defendant's officers were never adequately informed of de la Rosa's mental illness.  *Id.*  They therefore attempted to manage what they perceived to be a *behavior* problem, including his expression of suicidal ideations, with solitary confinement.  *Id.*  They did not consider less-restrictive alternatives to solitary confinement.  *Id.*  To compound their neglect, Defendant's officers failed to observe and monitor

3

individuals, including de la Rosa, inside solitary confinement. *Id.*

On May 4, 2018, Defendant transferred de la Rosa to Columbia Regional Care Center for inpatient mental health treatment and monitoring. *Id.* ¶ 22. When de la Rosa returned to Stewart on June 12, 2018, Defendant placed him in solitary confinement. De la Rosa informed Defendant's staff that he did not need to take any of his medications and would "suffer three terrible deaths in the future." *Id.* ¶¶ 23-24. On June 14, 2018, Defendant transferred de la Rosa to general population, only to return him to solitary confinement five days later on June 19, 2018. *Id.* ¶ 25.

On June 20, 2018, a licensed clinical social worker spoke with de la Rosa and documented his "limitation in mental functioning, his refusal of medical administration, and the potential of his behavior worsening." *Id.* ¶ 26. The next day, on June 21, Defendant's officer sentenced de la Rosa to 30 days in solitary confinement for an infraction of the facility's disciplinary code. The officer failed to consider the social worker's prior diagnosis as part of his disciplinary decision-making notwithstanding the requirement in Defendant's contract with ICE that he do so. *Id.* ¶¶ 27, 62. Defendant also "ignored its own suicide prevention policies and contractually binding federal performance-based detention standards by placing and

4

keeping [de la Rosa] in solitary confinement as punishment for displaying behaviors associated with [his] diagnosed mental health conditions." *Id.* ¶ 14.

On July 10, 2018, Defendant's employees documented that de la Rosa "would benefit from referral to a higher level of care mental health facility." *Id.* ¶ 28. That morning, de la Rosa informed Defendant's mental health staff that he "was going to die" and therefore did not need his medication. *Id.* That same day, de la Rosa told one of Defendant's guards that he intended to end his own life later in the day. *Id.* ¶ 29. The guard reacted by laughing at him and mocking him. *Id.* ¶ 30.

Although de la Rosa's behavior required Defendant, under its protocols, to place him on one-on-one suicide watch and visually check on him every 15 minutes, its employees failed to do so. Instead, Defendant's guards falsified logs to indicate that they had followed the protocols. *Id.* ¶ 33. Such falsification was a known practice at Stewart. *Id.* ¶ 36-37. Sometime after 10:30 p.m. on July 10, 21 days after de la Rosa had been placed in solitary confinement, Defendant's officer discovered de la Rosa hanging inside his solitary confinement cell. *Id.* ¶¶ 28, 38. Due to inadequate training, the response by Defendant's guards to the emergency was delayed. *Id.* ¶ 41. Adding further to the inadequate response, Defendant's oxygen tank and defibrillator failed to

work, and emergency responders were unable to resuscitate de la Rosa. *Id.* ¶ 38-40.

Plaintiff contends that Defendant's treatment of de La Rosa amounts to negligence under Georgia law and authorizes a wrongful death claim. That claim is not the subject of Defendant's motion to dismiss. Plaintiff also alleges that Defendant's conduct rises to the level of torture under the Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment ("CAT") and the International Covenant on Civil and Political Rights ("ICCPR"). Plaintiff asserts a claim pursuant to the ATS for this alleged torture. Plaintiff also claims that Defendant violated the federal RA. Defendant seeks dismissal of these two federal claims.

DISCUSSION

## I.  **Alien Tort Statute Claims**

"The ATS provides that '[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.'" *Baloco v. Drummond Co.*, 767 F.3d 1229, 1234 (11th Cir. 2014) (quoting 28 U.S.C. § 1350). "While the ATS grants jurisdiction to pursue a violation of the law of nations, it is well settled that it does not empower a cause of action for just any alleged violation of the law of nations." *Id.* "Rather, '[t]he [ATS's grant of jurisdiction] is best read as having been enacted on the understanding that the common law would provide a cause of

action for the modest number of international law violations with a potential for personal liability at the time [of its enactment].'" *Id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004)). "The Supreme Court . . . [has] identified only three cognizable violations of the law of nations under the ATS: (1) violations of safe conducts; (2) offenses against ambassadors; and (3) piracy." *Id.* "It did leave 'the door . . . ajar [for the judicial power to consider further law of nations violations] subject to vigilant doorkeeping.'" *Id.* (quoting *Sosa*, 542 U.S. at 729). "This circuit has recognized torture and extrajudicial killing as violations of the law of nations, thus expanding the 'very limited category' of cognizable claims under the ATS allowed by [the Supreme Court]." *Id.* (quoting *Sosa*, 542 U.S. at 720); *see also Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1344 (11th Cir. 2011) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005) (per curiam)) ("Specifically, '[t]o obtain relief under the AT[S], [the] plaintiff[] must be (1) an alien, (2) suing for a tort, which was (3) committed in violation of international law.'").

Plaintiff attempts to stretch the ATS to its outermost limits, and, as the Court explains in the remaining discussion, beyond the limits established by existing precedent. The Court finds that Plaintiff has adequately alleged he and his son satisfy the alien status requirement to fall within the potential protection of the

ATS.[1]  His claim fails, however, because the conduct alleged here does not amount to the violation of international law necessary to support an ATS claim.  Preliminarily, the Court observes that the Eleventh Circuit does not recognize ATS claims arising from alleged cruel, inhuman, or degrading treatment or punishment or arbitrary detention when the alleged conduct does not rise to the level of torture as defined under international law.  *See Aldana*, 416 F.3d at 1247 (explaining that there is "no basis in law to recognize . . . [a] claim for cruel, inhuman, degrading treatment or punishment" under the ATS); *Baloco*, 767 F.3d at 1234 (noting that "torture claims, unlike arbitrary detention and cruel, inhuman, degrading [treatment] or punishment claims, can support a cause of action under the ATS"); *Diaz v. United States*, 373 F. App'x 947, 947-48 (11th Cir. 2010) (per curiam) (citing *Aldana*, 416 F.3d at 1247) (affirming dismissal of ATS claims where plaintiff-prisoner alleged he was mistreated in the Georgia state prison system

---

[1] Defendant asserts that Plaintiff failed to allege that de la Rosa was an alien.  Plaintiff alleges that de la Rosa was a "longtime U.S. resident," Am. Compl. ¶ 10, and a detained immigrant, *Id.* ¶ 84.  Plaintiff does not allege that de la Rosa was a U.S. citizen; he does allege that Defendant administers a program that "includes ensuring detained immigrants like [de la Rosa] meaningful access to and participation in the adjudication of the charges justifying his detention at Stewart, determination of his eligibility for release from custody pending resolution of those charges, and adjudication of his claims for relief in removal proceedings conducted by the Department of Justice's Executive Office for Immigration Review." *Id.* ¶ 84.  He also alleges that Defendant operated Stewart pursuant to an agreement with ICE.  *Id.* ¶ 4.  Accepting these allegations as true and construing them in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged that de la Rosa was an alien for ATS purposes.

because the Eleventh Circuit has "previously held that non-torture claims of cruel, inhuman, and degrading treatment or punishment are not cognizable under the [ATS]").

Plaintiff's ATS claim can only survive dismissal if Plaintiff has sufficiently alleged facts that plausibly constitute torture under international law. *See Aldana*, 416 F.3d at 1245, 1252-53 (finding plaintiffs had alleged ATS claims for torture based on intentionally inflicted emotional pain and suffering where private security force held them hostage and threatened to kill them for eight hours as punishment for their labor activity). In *Aldana*, as the parties do here, the Eleventh Circuit relied on the CAT to define "torture." *Id.* at 1251 (explaining that the Eleventh Circuit looks to the CAT "when deciding what constitutes torture according to the laws of nations" under the ATS). The CAT provides: "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public

official acting in an official capacity or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).

"Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."  *Id.* § 208.18(a)(2).  "Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions."  *Id.* § 208.18(a)(3).  "In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from: (i) The intentional infliction or threatened infliction of severe physical pain or suffering; (ii) The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality; (iii) The threat of imminent death; or (iv) The threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the sense[s] or personality."  *Id.* § 208.18(a)(4)(i)-(iv).

With this guidance in mind, the Court finds that Plaintiff's allegations do not support the conclusion that Defendant's conduct constituted "torture" as that term is defined and contemplated by international law.  Although Plaintiff's allegations do support a claim for negligence, the allegations that Defendant intentionally

inflicted severe physical pain or suffering on de la Rosa are conclusory. *See Aldana*, 416 F.3d at 1253 ("Much of the pleading about physical . . . torture is conclusory. . . . These kinds of allegations cannot overcome a motion to dismiss."). Plaintiff's amended complaint is similarly devoid of any plausible *factual* allegations even suggesting that Defendant intentionally inflicted "prolonged mental harm" in any of the ways described by the CAT. *See* 8 C.F.R. § 208.18(a)(4)(i)-(iv). And Plaintiff has not otherwise identified any binding authority that Defendant's conduct constituted "torture" under international law. Given the admonition of the Supreme Court and Eleventh Circuit that courts should exercise "vigilant doorkeeping" when considering ATS claims, the Court concludes that Plaintiff has failed to state a claim for torture under the ATS. *Sosa*, 542 U.S. at 729; s*ee Baloco ex rel. Tapia*, 640 F.3d at 1344 n.8 (explaining that "it is clear that only a narrow class of international law violations constitute causes of action pursuant to the ATS"). For these reasons, Defendant's motion to dismiss Plaintiff's ATS claim is granted.

## II.  **Rehabilitation Act Claims**

Defendant moves to dismiss Plaintiff's RA claim on the sole ground that Plaintiff has not adequately alleged that Defendant receives "federal financial assistance." The RA prohibits disability discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. "The

Rehabilitation Act does not define 'federal financial assistance.'" *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005). "Courts, however, have defined the term as used in the Rehabilitation Act to mean the federal government's provision of a subsidy to an entity." *Id.* "Generally, 'to determine the applicability of [the Rehabilitation Act], [a court] must determine whether the government intended to give [the defendant] a subsidy,' as opposed to compensation." *Id.* (quoting *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990)).

Defendant argues that it received only compensation—not federal financial assistance—pursuant to a procurement contract with ICE. But Plaintiff has alleged that Defendant received federal financial assistance and cites, for example, subsidies received through its Voluntary Work Program. Plaintiff's amended complaint includes the following specific allegations regarding the Voluntary Work Program: "[T]he United States authorize[d] [Defendant] to use detainees to perform essential work at wages far, far below market rates, work that [Defendant] would otherwise be required to carry out with additional staff hired from the community at market rates, thus providing [Defendant] a significant financial benefit." Am. Compl. ¶ 75. Plaintiff further alleges that Defendant was paid a "subsidy," and not simply compensation, of $1.00 per day per detainee in the program: "the

United States [paid Defendant] a stipend of $1.00 per day for each detainee who participate[d] in the Voluntary Work Program." *Id.* Accepting Plaintiff's allegations as true and construing them in his favor, the Court finds that he has sufficiently alleged that Defendant received federal financial assistance for purposes of the RA.

**III. Motion to Strike**

In addition to its motion to dismiss, Defendant seeks to strike allegations in Plaintiff's amended complaint related to other detainees at Stewart.  Specifically, Defendant seeks to strike a footnote in Plaintiff's amended complaint that states that since the death of another Stewart detainee, "at least six more men[, including de La Rosa,] have died at Stewart . . . making it among the deadliest ICE detention facilities in the United States." *Id.* ¶ 16 n.2.  Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f).

Plaintiff's allegations are neither redundant, immaterial, impertinent, or scandalous.  They attempt to support Plaintiff's state law wrongful death claim, which will require Plaintiff to

ultimately prove that de la Rosa's death was reasonably foreseeable. *See, e.g.*, *Brandvain v. Ridgeview Inst., Inc.*, 372 S.E.2d 265, 272-73 (Ga. Ct. App. 1988) (explaining that a wrongful death claim based on suicide requires showing foreseeability). The Court cannot say at this stage that these allegations are wholly irrelevant to that essential element of Plaintiff's claim. Accordingly, Defendant's motion to strike is denied.

CONCLUSION

For the foregoing reasons, Defendant's motion (ECF No. 23) is granted in part and denied in part. The Court grants Defendant's motion to dismiss Plaintiff's ATS claim but denies its motion to dismiss his RA claims and its motion to strike.

IT IS SO ORDERED, this 25th day of June, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA