**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

EFRAIN ROMERO-GARCIA, as father
and statutory next-of-kin of Efrain Romero de
la Rosa,

              Plaintiff,

    v.

CORECIVIC, INC.,

              Defendant.

Civil Action No. 4:20-cv-00158-CDL

**THE PARTIES' JOINT PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN**

Pursuant to the Court's Orders (Docs. 18, 27, 48), Federal Rules of Civil Procedure 16 and

26, and Local Rules 16 and 26, the parties met and conferred and developed the following Joint

Proposed Scheduling Order and Discovery Plan:

**I.      NATURE OF THE CASE**

By the Plaintiff:

This is a wrongful death action for compensatory and punitive damages arising out of the

preventable suicide inside a solitary confinement cell at the Stewart Detention Center ("Stewart")

by Efrain Romero de la Rosa ("Efrain"), a 38 year-old non-citizen immigrant, but longtime U.S.

resident, who suffered from acute schizophrenia.  *See* Doc. 21, First Amended Complaint ("FAC")

at ¶1, 84.  Plaintiff brings this action as the father and statutory next of kin of Efrain.  *Id.* at ¶2.

Stewart is owned and operated by CoreCivic pursuant to an Inter-Governmental Services

Agreement ("IGSA") between U.S. Immigration and Customs Enforcement ("ICE"), a sub-

component of the Department of Homeland Security ("DHS"), and Stewart County, Georgia.  *Id.*

at ¶4.  Efrain's death was the second preventable death by suicide in less than 15 months at Stewart,

following the in-custody suicide of Jeancarlo Alfonso Jiminez Joseph ("Jean") at the same facility just 14 months prior. *Id.* at ¶¶9, 16, 34. Since Jean's death, at least six more detainees have died at Stewart. *Id.* at ¶16 n.2.

Starting at least two months prior to and continuing until his death, Efrain presented with acute psychiatric history and psychotic problems, refused to take his medications, and displayed signs of and made verbal statements of suicidal ideation. *Id.* at ¶¶10, 19-20, 24-26, 28-29. He was also transferred by Stewart to Columbia Regional Care Center for inpatient mental health treatment due to his post-solitary confinement acute mental health decompensation at Stewart. *Id.* at ¶¶21-22. Upon his return to Stewart on June 12, 2018, he was placed back in solitary confinement, returned to general population on June 14, but then promptly placed back in solitary confinement as punishment for behavioral consequences of his (then un-medicated) schizophrenia. *Id.* at ¶¶23, 25. On June 21, 2018, CoreCivic official L. Gainer sentenced Efrain to 30 days in solitary confinement, where he stayed until his death on July 10, 2018. *Id.* at ¶27-28. The day Efrain took his life, he told a guard about his plan to kill himself, and instead of taking action, the guard mocked Efrain. *Id.* at ¶29-30. Contrary to all policies, contractual requirements, and human decency, and the benefit of hindsight, CoreCivic took none of the actions required when an inmate presents with suicidal ideations, and instead punished Efrain with the one thing that could make his suicidal ideation worse—largely unsupervised solitary confinement. *Id.* ¶¶10-18, 30-37. Efrain's death carries inexcusable culpability, as CoreCivic had the benefitted of hindsight—it knew which of its operations had failed to save Jean's life, and chose to ignore and not address those failures to save costs. *Id.* ¶¶16-18, 34-37. Moreover, upon discovery of Efrain's lifeless body, CoreCivic's serial shortchanging of basic necessities deprived Efrain of any chance of survival: the oxygen tank was

broken, the defibrillator did not work, and it took five minutes before anyone even bothered to call 911. *Id.* at ¶¶38-43. Efrain did not have to die. *Id.* ¶43.

By the Defendant:

Plaintiff Efrain Romero-Garcia is a resident of Mexico and the father and next-of-kin to Efrain Romero de la Rosa (the "Decedent"). The Complaint alleges that the Decedent, also a resident of Mexico, died by suicidal hanging on July 10, 2018, while being detained at the Stewart Detention Center ("SDC") located in Lumpkin, Georgia. Defendant CoreCivic owns and operates SDC. Plaintiff alleges that the Decedent suffered from mental illness and that, leading up to his suicide, he told corrections officers and mental health providers that he was going to die soon. Decedent was segregated at the time of his death due to repeatedly making inappropriate sexual comments to a female corrections officer. The Complaint alleges (1) wrongful death under Georgia law, (2) torture and cruel, inhumane, and degrading treatment under the Alien Tort Statute ("ATS") 28 U.S.C. § 1350, and (3) disability discrimination under the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

Defendant CoreCivic filed a Motion to Dismiss Counts 2 and 3. The Court granted Defendant's Motion in part, dismissing Count 2 (the ATS claim), but denied Defendant's Motion on Count 3 (the RA claim). Thus, the remaining claims are Count 1 (wrongful death) and Count 3 (the RA claim).

CoreCivic denies any wrongdoing and denies that it was responsible for providing medical or mental health services at SDC prior to November 2018. CoreCivic also denies that it maintained any medical or mental health records pertaining to the decedent. CoreCivic affirmatively denies that the decedent ever sought accommodation that was denied solely because of an alleged disability. CoreCivic denies that it receives federal funding within the meaning of the RA and

affirmatively alleges that detention itself is not a service, program, or activity under the RA.

CoreCivic denies that Plaintiff is entitled to any relief from CoreCivic.

## II.     LEAD COUNSEL OF RECORD

For Plaintiff

Kimberly A. Evans, *Pro Hac Vice*
Grant Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 622-7086
kevans@gelaw.com

For Defendant

Daniel P. Struck (*pro hac vice*)
AZ Bar No. 012377
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com

## III.    COMPLAINT AND ANSWER FILING DATES

A.     Plaintiff filed his First Amended Complaint ("FAC") on December 4, 2020.

B.     Defendant filed an Answer to the FAC on December 18, 2020.

C.     Defendant filed an Amended Answer to the FAC on July 9, 2021.

## IV.    DISCOVERY PLAN AND DEADLINES

A.     Initial Disclosures:

The Parties will exchange initial disclosures pursuant to Federal Rule of Civil Procedure

26(a) by **August 16, 2021**.

B.      Time for Discovery:

Given the complex nature of this matter, the multitude of witnesses, and anticipated

depositions, the parties require a discovery time greater than six months and propose the following

schedule:

i.      Deadline to Join Parties and Amend Pleadings: **October 11, 2021**.
ii.     Experts:
   a.  Plaintiff's Experts: **January 10, 2022**.
   b.  Defendant's Experts: **February 10, 2022**.
   c.  Rebuttal Experts: **March 10, 2022**.
iii.    Discovery Cut-Off Date: **April 11, 2022**.
iv.     Dispositive Motions: **June 13, 2022**.

Plaintiff intends to seek summary judgment, including on liability.

The parties agree with the presumptive limits for interrogatories and depositions pursuant

to the Federal and Local Rules.

i.      **Interrogatories:** Max. 25 per side to any party.
ii.     **Requests for Production:** Max. 10 per side to any party.
iii.    **Requests for Admissions:** Max. 15 per side to any party.
iv.     **Depositions:** Max. 10 per side.

C.      Witnesses to Be Deposed

At this time the Parties anticipate deposing the following witnesses. Plaintiff will seek to

limit defense depositions to 10 witnesses after exchanging written discovery with CoreCivic.

CoreCivic opposes extending the presumptive limit for depositions beyond 10 per side.

By Plaintiff:

1.      Efrain Romero Garcia, Plaintiff.

2.      Damon Hininger, CEO – Mr. Hininger has knowledge of CoreCivic's corporate risk management determinations factoring in a certain level of detainee deaths to the company's contract performance risks.

3.      Freddy Wim, c/o CoreCivic – Mr. Wims has knowledge of CoreCivic's failure to apply the consequences of its understaffing decisions to anyone within the company other than its lowest level employees.

4. Scott Allen, MD, c/o Dana Gold, Government Accountability Project, Washington, DC – Dr. Allen has knowledge of CoreCivic's serial failures to implement recommendations of DHS CRCL and ICE inspection teams with respect to care of mentally ill detained immigrants.

5. Justin Lowthorpe, Georgia Bureau of Investigation, c/o GBI Counsel – Mr. Lowthorpe has knowledge of state law enforcement's investigations of deaths in custody at Stewart and the serial falsifying of logs by CoreCivic staff and supervisors portrayed on videos obtained through GBI's investigations.

6. John Bretz, c/o USAO MDGa – Mr. Bretz knowledge of CoreCivic's failure to implement any systemic changes in the wake of Jean Jiménez's death, and the ensuing deaths of Efrain Romero and 6 other detained immigrants that occurred as a result.

7. Camille Baptiste-Lowers, c/o CoreCivic – Ms. Baptiste-Lowers has knowledge regarding CoreCivic's policies and procedures at Stewart, and the company's internal investigations.

8. Daniel McKinney, Forensic Toxicologist – Mr. McKinney has knowledge regarding Romero's levels of medication at the time of his death.

9. Natasha Grandhi MD, Associate Medical Examiner – Dr. Grandhi performed the autopsy of Efrain Romero on behalf of Georgia Bureau of Investigation, Division of Forensic Sciences, 404-270-8186, natasha.grandhi@gbi.ga.gov.

10. Tracy Cunningham, Forensic Toxicologist – Ms. Cunningham performed toxicology report on Efrain Romero's deceased body post-mortem on behalf of the Georgia Bureau of Investigation, Division of Forensic Sciences, 404-270-8357, tracy.cunningham@gbi.ga.gov.

11. Tameeka Alston, c/o CoreCivic – Ms. Alston has knowledge regarding classification of Romero upon his return to Stewart Detention Center from Columbia Care facility.

12. Tyleshia Lane, c/o CoreCivic – Ms. Lane has knowledge regarding CoreCivic's disciplinary policies and failure to incorporate mental health diagnoses or consult treatment BHP.

13. L. Gainer c/o CoreCivic – Mr/Ms. Gainer has knowledge regarding CoreCivic's use of solitary confinement and the disciplinary system to control the adverse effects of untreated mental health patients detained at Stewart Detention Center.

14. Warden Charlie Peterson, c/o CoreCivic – Mr. Peterson is the Warden at Stewart and assigned the death of Romero to be investigated.

15. CoreCivic Detention Officers:

   a. Jamorris McCoy - Guard employed at Stewart Detention Center who monitored Romero and was the first to find Romero on the night he died;

   b. Dywane Richardson;

   c. Rodney Dent - Guard employed at Stewart Detention Center who monitored Romero and was the first to find Romero on the night he died;

   d. Patrick Blue;

   e. Jamal Williams;

   f. Charles Wheat;

   g. Carla Gordon;

   h. Nicole West;

   i. Shakerra Ponder;

   j. Shaniya Waymon;

   k. Crystal Ricks;

   l. Cassidy Brown;

   m. Alicia Figgins;

   n. Johnny Wright;

   o. Elizabeth Moses;

   p. Jimmy Coleman; and

   q. Nyshia Pope.

16. CoreCivic Licensed Practical and Registered Nurses who treated Romero:

   a. Amy O. Jackson;

   b. Leooma Bailey;

   c. Gloria M. Benavidez;

   d. Neferter Bey;

   e. Alice Kerrison; and

   f. Tanya L. Slaughter.

17. CoreCivic Detainees with personal knowledge:

   a. Isaac Kargbo; and

   b. Luis Alvarez-Pineda.

- 7 -

18. FRCP 30(b)(6) Witness from DHS-OIG, c/o DHS General Counsel – These witnesses, who have yet to be identified, have knowledge of the Office of Inspector General's ("OIG") rejected recommendation for federal criminal prosecution of CoreCivic guards for lying about inspection logs in Jean Jimenez's death; OIG's 2017 and subsequent inspections of Stewart documenting gross understaffing and CoreCivic's continuing failure to reduce detention capacity in light of it.

19. CoreCivic CFO – This witness, who has yet to be identified, has knowledge of Stewart's profitability under its contracts when remaining chronically understaffed, and the corporate costs of full complying with its contracts at Stewart in ways that would ensure full and timely monitoring of people living with mental health issues in solitary at the facility.

Plaintiff intends to supplement this list if/when discovery reveals the identities of the categories of deponents proposed above, including any other required identifying information of any witnesses listed above, and/or the need for additional depositions.  Plaintiff does not have the mailing address and/or other contact information for most witnesses at this time, but will supplement this information when discovered and/or obtained.

By Defendants:

1. Plaintiff

2. Plaintiff's expert(s)

3. The Decedent's medical and mental health providers.

CoreCivic intends to supplement this list should the need arise during discovery. The medical staff Plaintiff proposes to depose were not CoreCivic employees as CoreCivic did not provide medical or mental health care at the facility during times relevant to the First Amended Complaint.  Plaintiff disputes CoreCivic's position and also believes that this issue is improperly raised at this time.

The Parties will confer to agree on the times and locations of the depositions.  The Parties will also supplement the list should additional depositions become necessary.

D.     Estimated Cost of Discovery and Attorneys' Fees

1.     *Plaintiff's Position*

Plaintiff seeks all compensatory and punitive damages that he is entitled to under federal and state law.  Plaintiff seeks compensatory and punitive damages from CoreCivic in the amount of $50,000,000.00 ($5 million in compensatory damages and $45 million in punitive damages), in addition to all other relief as articulated in Plaintiff's Complaint, including reasonable attorneys' fees, interest, and all other relief that is just, equitable, and proper.  Plaintiff estimates its discovery costs (including attorneys' fees) could range from $100,000 to $200,000, but may increase depending on the range of discovery and motion practice, if necessary.

2.     *Defendant's Position*

Based on its own proposed discovery schedule and limitation, CoreCivic estimates its discovery costs (including attorneys' fees) could range from $200,000 to $300,000.  CoreCivic's costs and attorneys' fees related to discovery are likely to increase significantly depending upon the expanse of Plaintiff's proposed discovery. CoreCivic asserts that Plaintiff's punitive damages claim is subject to O.C.G.A. § 51-12-5.1.  Plaintiff disputes this assertion.

## V.     OTHER ISSUES

A.     Protective Orders

CoreCivic anticipates moving the Court for entry of a protective order regarding any confidential and/or security-sensitive documents and information necessarily produced or disclosed in the case.  CoreCivic will also seek a protective order against Plaintiff's proposed apex depositions of CoreCivic CEO Damon Hininger and its CFO, neither of whom have personal knowledge of the issues alleged in the case. Moreover, CoreCivic's financial statements and

- 10 -

disclosures are publicly available making the deposition of its CFO unnecessary. Plaintiff disputes CoreCivic's assertions and believes these substantive issues are improperly raised at this time.

The Parties agree to meet and confer about the contents of any protective orders, and will file any proposed orders, or disagreements thereon, with the Court by **August 10, 2021.**

B. <u>Discovery of Electronically Stored Information</u>

Plaintiff anticipates the need for electronic discovery in this matter. Plaintiff agrees to meet and confer and prepare a protocol for the discovery of electronically stored information, consistent with Federal Rule of Civil Procedure.

Dated: July 21, 2021

s/*Daniel Struck*
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
David Bobo Mullens, III (GA Bar No. 258029)
OLIVER MANER LLP
218 West State Street
Savannah, Georgia 31401
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
dbmullens@olivermaner.com

Attorneys for Defendant CoreCivic, Inc.

Respectfully submitted,

s/*Kimberly Evans*
Kimberly A. Evans *(pro hac vice)*
Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Phone: (302) 622-7086
kevans@gelaw.com

Irene R. Lax *(pro hac vice)*
Grant & Eisenhofer P.A.
485 Lexington Ave, 29th Floor
New York, NY 10017
Phone: (646) 722-8512
ilax@gelaw.com

R. Andrew Free, Esq. *(pro hac vice)*
PO Box 90568
Nashville, TN 37209
Phone: (844) 321-3221
Fax: (615) 829-8959
andrew@immigrantcivilrights.com

Shirley Zambrano
Zambrano & Ruiz, LLC
1995 North Park Place, Suite 240
Atlanta, GA 30339
Phone: (770) 769-5821
szambrano@zambranoandruiz.com

*Attorneys for Plaintiff*

DATED: _July 26, 2021

BY THE COURT:

S/CLAY D. LAND_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA